BRYAN CAVE LLP
Lloyd A. Palans (LP-8572)
Michelle McMahon (MM-8130)
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 541-2000
Facsimile: (212) 541-1493

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |
|---|---|
| In re: | Chapter 11 Case No. |
| 216 West 18 Owner LLC, *et al.*, | [          ] |
| Debtors. | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DEBTORS' PREPACKAGED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LLP
Lloyd A. Palans (LP-8572)
Michelle McMahon (MM-8130)
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 541-2000
Facsimile: (212) 541-1493

*Attorneys for Debtors*
Dated: September 26, 2011

TABLE OF CONTENTS

                                                                                                Page

INTRODUCTION ...................................................................................................1

ARTICLE I DEFINITIONS ...................................................................................1

ARTICLE II METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS AND
        GENERAL PROVISIONS AND CLASSIFICATION OF CLAIMS AND
        INTERESTS............................................................................................8
    2.1.   General Rules of Classification ...............................................................8
    2.2.   Administrative Claims, Priority Tax Claims and Fee Claims.........................9
    2.3.   Bar Date for Administrative Claims .........................................................9
    2.4.   Bar Date for Fee Claims ........................................................................9
    2.5.   Classification of Claims and Interests.......................................................9

ARTICLE III TREATMENT OF UNCLASSIFIED CLAIMS....................................9
    3.1.   Administrative Claims ............................................................................9
    3.2.   Priority Tax Claims...............................................................................10
    3.3.   Fee Claims ..........................................................................................10

ARTICLE IV CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
        AND EQUITY INTERESTS .....................................................................10
    4.1.   Class 1 Other Priority Claims ................................................................10
    4.2.   Class 2 Mortgage Lender Claim .............................................................10
    4.3.   Class 3 Owner General Unsecured Claims ...............................................11
    4.4.   Class 4 Other General Unsecured Claims.................................................11
    4.5.   Class 5 Mezzanine Loan Claim ..............................................................12
    4.6.   Class 6 Equity Interests.........................................................................12
    4.7.   Reservation of Rights............................................................................12

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN .............................12
    5.1.   Corporate Action..................................................................................12

ARTICLE VI RELEASES.......................................................................................12
    6.1.   Releases by the Debtors .........................................................................12
    6.2.   Injunction ...........................................................................................13

ARTICLE VII DISTRIBUTIONS UNDER THE PLAN..............................................13
    7.1.   Distributions for Claims Allowed as of the Effective Date ..........................13
    7.2.   Delivery of Distributions .......................................................................13
    7.3.   Reserves for Administrative, Priority Tax and Other Priority Claims............14
    7.4.   Reserves for Disputed Claims.................................................................14
    7.5.   Claims Objection Deadline ....................................................................14
    7.6.   Settlement of Disputed Claims ...............................................................15
    7.7.   Unclaimed Property ..............................................................................15

7.8.    Release of Liens .................................................................................................15
7.9.    Fractional Cents ..................................................................................................15
7.10.   Payments of Less than Twenty-Five Dollars .......................................................15

ARTICLE VIII UNEXPIRED LEASES AND EXECUTORY CONTRACTS ..........................15
8.1.    Assumption of All Agreements ............................................................................15
8.2.    Claims for Damages ............................................................................................16

ARTICLE IX CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE ......................16
9.1.    Conditions to Confirmation of the Plan ...............................................................16
9.2.    Conditions to Effectiveness of the Plan ...............................................................17
9.3.    Effect of Failure of Condition ..............................................................................17
9.4.    Notice of the Effective Date; Actions Taken on Effective Date ...........................17

ARTICLE X RETENTION OF JURISDICTION ...................................................................17
10.1.   Jurisdiction .........................................................................................................17

ARTICLE XI MISCELLANEOUS PROVISIONS ..................................................................19
11.1.   Pre-Confirmation Modification ...........................................................................19
11.2.   Post-Confirmation Immaterial Modification .........................................................19
11.3.   Post-Confirmation Material Modification .............................................................19
11.4.   Withdrawal or Revocation of the Plan .................................................................19
11.5.   Payment of Statutory Fees ..................................................................................20
11.6.   Successors and Assigns ......................................................................................20
11.7.   Exculpation .........................................................................................................20
11.8.   Confirmation Injunction ......................................................................................20
11.9.   Comprehensive Settlement of Claims and Controversies ....................................21
11.10.  Preservation of Insurance ...................................................................................21
11.11.  Cramdown ..........................................................................................................21
11.12.  Governing Law ...................................................................................................21
11.13.  Notices ...............................................................................................................21
11.14.  Saturday, Sunday or Legal Holiday ....................................................................22
11.15.  Exemption From Transfer Taxes ........................................................................22
11.16.  Severability ........................................................................................................23
11.17.  Headings .............................................................................................................23

## INTRODUCTION

216 West 18 Owner LLC; 216 West 18 Mezz LLC; and 216 West 18 Holder LLC, the above-captioned Debtors[1], hereby propose this Pre-Packaged Liquidating Chapter 11 Plan pursuant to section 1121 of the Bankruptcy Code.  Reference is made to the Disclosure Statement for risk factors and a summary and analysis of the Plan and certain related matters. The Debtors are the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article XI of this Plan, the Debtors expressly reserve the right to alter, amend, supplement or modify this Plan, one or more times, before its substantial consummation.

## ARTICLE I

## DEFINITIONS

1.1.    **Scope of Definitions**. As used in this Plan, the following terms shall have the respective meanings specified below.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

1.2.    "**Accrued**" shall mean an expense incurred but not yet billed for nor paid.

1.3.    "**Acquisition Loan**" shall mean the pre-petition secured loan in accordance with the terms of that certain loan agreement, as modified, amended, and/or restated from time to time, by Owner as borrower, dated as of April 17, 2007, in the aggregate principal amount of $27,763,992.82 as of the Petition Date plus interest, costs, fees, penalties and expenses.

1.4.    "**Adequate Protection Lien**" shall have the meaning ascribed to it in the Cash Collateral Order.

1.5.    "**Administrative Claim**" shall mean a Claim under section 503(b) (including, without limitation, all administrative claims under Section 503(b)(9) and 1114(e)(2) of the Bankruptcy Code) or determined to be an Allowed Administrative Claim by a Final Order that is entitled to priority under sections 507(a)(1) or 507(b) of the Bankruptcy Code, for costs or expenses of administration of the Chapter 11 Cases including, without limitation, any actual and necessary expenses of operating the businesses of the Debtors or preserving the estates incurred after the Petition Date, and any and all fees and expenses of Professionals Filed under sections 330, 331 or 503 of the Bankruptcy Code.

1.6.    "**Administrative Claims Bar Date**" shall have the meaning ascribed to such term in section 2.3 of this Plan.

---

[1] Capitalized terms not defined in this Introduction shall have the meanings set forth in Article I of this Plan.

1.7.   "**Administrative Claims Reserve**" shall have the meaning ascribed to such term in section 7.3 of this Plan.

1.8.   "**Allowed Claim**" or "**Allowed Administrative Claim**" shall mean: (a) any Claim, proof of which is/was Filed with the Bankruptcy Court or the Debtors' court-appointed claims agent on or before the date designated by the Bankruptcy Court as of the last date(s) for filing proofs of claim with respect to such Claim, or which has been or hereafter is scheduled by the Debtors as liquidated in amount and not disputed or contingent and which, in either case, is a Claim as to which no objection to the allowance thereof has been Filed within the applicable period of limitation (if any) for objection to Claims fixed by the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court (allowing such Claim in whole or in part); (b) a Claim that is allowed (i) in any contract, instrument, or other agreement entered into in connection with the Plan, (ii) in a Final Order or (iii) pursuant to the terms of the Plan; or (c) a request for payment of an Administrative Claim, which is made before the Administrative Claims Bar Date, or otherwise has been deemed timely asserted under applicable law, and is an Administrative Claim as to which no objection to allowance thereof has been Filed within the applicable deadline pursuant to Section 2.3 of the Plan.   Except as otherwise specified in this Plan or a Final Order, the amount of an Allowed Claim shall not include interest on such Claim after the filing of the Chapter 11 Cases.

1.9.   "**Ballot**" shall mean the form or forms that will be distributed along with the Disclosure Statement to holders of Allowed Claims in classes that are Impaired under the Plan and entitled to vote, which the holders of Impaired Claims may use to vote to accept or reject the Plan.

1.10.   "**Bank**" shall mean Bank of America, N.A.

1.11.   "**Bankruptcy Code**" shall mean title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.12.   "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the Southern District of New York or such other court as may hereafter be granted jurisdiction over the Chapter 11 Cases.

1.13.   "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Cases, and any Local Rules of the Bankruptcy Court.

1.14.   "**Bar Date**" shall mean the date set by the Bankruptcy Court as the last day to file proofs of Claim pursuant to the Bar Date Order to be entered by the Bankruptcy Court.

1.15.   "**Bar Date Order**" shall mean the order to be entered by the Bankruptcy Court setting the Bar Date.

1.16.   "**Building Loan**" shall mean the pre-petition secured loan in accordance with the terms of that certain Loan Agreement, as modified, amended, and/or restated from time to time, by Owner as borrower, and Bank as lender, dated as of April 17, 2007, in the aggregate principal

amount of $10,287,500.00 as of the Petition Date plus interest, costs, fees, penalties and expenses.

1.17.   "**Business Day**" shall mean any day other than a Saturday, Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

1.18.   "**Cash**" shall mean cash and cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

1.19.   "**Cash Collateral Order**" shall mean the interim and/or final Order(s) (A) Authorizing Debtors to Utilize Cash Collateral and Grant Replacement Security Interests and Super Priority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105 and 363 in favor of Mortgage Lender; and (B) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362.

1.20.   "**Chapter 11 Cases**" shall mean the above-captioned chapter 11 cases pending for the Debtors.

1.21.   "**Claim**" shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code.

1.22.   "**Class**" shall mean a category of holders of Claims or Equity Interests, as classified pursuant to Article II of this Plan.

1.23.   "**Class 3 Disputed Claims Reserve**" shall have the meaning ascribed to such term in section 7.4 of this Plan.

1.24.   "**Committee**" shall mean the Official Committee of Unsecured Creditors, if any, appointed by the Office of the United States Trustee and as reconstituted from time to time and existing as of the Confirmation Date.

1.25.   "**Confirmation**" shall mean the entry of the Confirmation Order on the docket of the Bankruptcy Court.

1.26.   "**Confirmation Date**" shall mean the date of entry of an order of the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

1.27.   "**Confirmation Hearing**" shall mean the hearing to confirm the Plan.

1.28.   "**Confirmation Order**" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.29.   "**Creditor**" shall have the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

1.30.   "**Debtors**" shall mean Holder, Owner, and Mezz Debtor, each a Debtor.

1.31.   "**Deficiency Claim**" shall mean, with respect to a Claim that is partially secured, the amount by which the Allowed amount of such Claim exceeds the value of the property owned or held by the Debtors that collateralizes the Claim.

1.32.   "**Disclosure Statement**" shall mean the disclosure statement respecting the Plan, as approved by the Bankruptcy Court as containing adequate information in accordance with section 1125 of the Bankruptcy Code, all exhibits and annexes thereto and any amendments or modifications thereof.

1.33.   "**Disputed Claim**" shall mean any Claim, including any Administrative Claim, which has not become an Allowed Claim pursuant to the Plan or a Final Order.

1.34.   "**Disputed Claims Reserve**" shall have the meaning ascribed to such term in section 7.4 herein.

1.35.   "**Disputed Cure Amounts**" shall have the meaning ascribed to such term in section 8.1 herein.

1.36.   "**Disputed Equity Interest**" shall mean any Equity Interest which has not become an Allowed Equity Interest pursuant to the Plan or a Final Order.

1.37.   "**Effective Date**" shall mean the first Business Day following the date on which each of the conditions set forth in sections 9.1 and 9.2 of the Plan have been satisfied or waived in accordance with such sections; provided that if a stay of the Confirmation Order is in effect, then the Effective Date shall mean the first Business Day after such stay is no longer in effect.

1.38.   "**Entity**" shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

1.39.   "**Equity Interest**" shall mean the interest of any holder of an equity security of any of the Debtors represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.40.   "**Estates**" shall mean the estates of the Debtors.

1.41.   "**Fee Claim**" shall mean a claim under sections 327, 330(a), 503 or 1103 of the Bankruptcy Code for the compensation of a Professional for services rendered or reimbursement of expenses incurred in the Chapter 11 Cases on or prior to the Effective Date which has been approved by a Final Order (including expenses of the members of the Committee, if any).

1.42.   "**Fee Claim Bar Date**" shall have the meaning ascribed to such term in section 2.4 of this Plan.

1.43.   "**File**", "**Filed**", or "**Filing**" shall mean file, filed or filing with the United States Bankruptcy Court for the Southern District of New York, or with respect to proofs of claim,

proofs timely and properly transmitted to the Clerk of the Court or to the Debtors' claims agent to the extent one is appointed pursuant to Order of the Bankruptcy Court.

1.44.    "**Final Order**" shall mean an order entered by the Bankruptcy Court or any other court exercising competent jurisdiction over the subject matter and the parties which has not been reversed, amended or stayed and as to which (i) no appeal, certiorari proceeding or other review reconsideration or rehearing has been requested or is still pending, and (ii) the time for filing a notice of appeal or petition for certiorari or further review reconsideration or rehearing has expired.

1.45.    "**General Unsecured Claim**" shall mean any unsecured, non-priority Claim, including, without limitation, any Indemnification Claim, that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Fee Claim, or Secured Claim.

1.46.    "**Holder**" shall mean 216 West 18 Holder LLC.

1.47.    "**Impaired**" shall have the meaning ascribed to such term in section 1124 of the Bankruptcy Code.

1.48.    "**Indemnification    Claim**" shall mean a Claim for indemnification or advancement.

1.49.    "**Liens**" shall mean valid and enforceable liens, mortgages, security interests, pledges, charges, encumbrances, or other legally cognizable security devices of any kind.

1.50.    "**LPA**" shall mean the Loan Purchase Agreement, dated as of September 9, 2011, between Mortgage Lender Designee and Mortgage Lender.

1.51.    "**Mezz Debtor**" shall mean 216 West 18 Mezz LLC.

1.52.    "**Mezzanine Loan**" shall mean the pre-petition secured loan in accordance with the terms of that certain Loan Agreement, as modified, amended, and/or restated from time to time, by Mezz Debtor as borrower, and Bank as lender, dated as of April 17, 2007 in the aggregate principal amount of $19,560,000.00 plus interest, costs, fees, penalties and expenses which, as of September 14, 2011, aggregated $24,632,345.08.

1.53.    "**Mezzanine Lender**" shall mean 216 W 18 Lender LLC or its successors, designees and/or assignees.

1.54.    "**Mortgage**" shall mean that certain first Mortgage and Agreement of Consolidation and Modification of Mortgage, Assignment of Leases and Rents, and Security Agreement, dated as of April 17, 2007, granted by Owner in favor of Bank, which granted to Bank a lien on and security interest in the Mortgaged Property.

1.55.    "**Mortgage Lender**" shall mean 216 W 18 Lender LLC or its successors, designees and/or assignees.

1.56. "**Mortgage Lender Allowed Deficiency Claim**" shall have the meaning ascribed to it in Section 4.2 herein.

1.57. "**Mortgage Lender Allowed Secured Claim**" shall have the meaning ascribed to it in section 4.2 herein.

1.58. "**Mortgage Lender Designee**" means 18th Street Owner LLC, a Delaware single member limited liability company.

1.59. "**Mortgage Loan**" shall mean the pre-petition secured loan of Owner as borrower, and Bank as lender, consisting of the Acquisition Loan, the Project Loan, and the Building Loan in the aggregate principal amount of $48,000,000.00 as of the Petition Date plus interest, costs, fees, penalties and expenses which, as of September 15, 2011, aggregated $73,518,067.26.

1.60. "**Mortgage Loan Documents**" shall mean those documents listed on Exhibit A to the Plan, and as such documents may be amended, restated, replaced, supplemented or otherwise modified from time to time.

1.61. "**Mortgaged Property**" shall mean Owner's interests in that certain parcel of improved real estate located at 218 West 18th Street, New York, New York, together with the Debtors' interest in any of the improvements on such property and in all furniture, fixtures, equipment and all leases, rents, issues and profits related thereto.

1.62. "**Other Priority Claim**" shall mean any Claim against the Debtors entitled to priority in payment under section 507(a) of the Bankruptcy Code other than an Administrative Claim, Fee Claim or Priority Tax Claim.

1.63. "**Owner**" shall mean 216 West 18 Owner LLC.

1.64. "**Person**" shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

1.65. "**Petition Date**" shall mean the date upon which the Debtors file their petitions under Chapter 11 of the Bankruptcy Code.

1.66. "**Plan**" shall mean this Prepackaged Liquidating Chapter 11 Plan, all exhibits hereto and any amendments or modifications hereof made in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

1.67. "**Plan Expenses**" shall mean all actual and necessary costs and expenses incurred after the Effective Date in connection with the administration of the Plan, including, but not limited to, (i) the Debtors' costs, expenses and legal fees incurred related to filing and prosecuting objections to Claims, and (ii) Statutory Fees.

1.68. "**Plan Support Agreement**" shall mean each Plan Support Agreement in which a holder of a General Unsecured Claim or Equity Interest reached certain agreements with the Debtors, including to support this Plan.

6

1.69. "**Priority Tax Claim**" shall mean any Claim for taxes against the Debtors entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

1.70. "**Professionals**" shall mean those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered to the Debtors prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.71. "**Project Loan**" shall mean the pre-petition secured loan in accordance with the terms of that certain Loan Agreement, as modified, amended, and/or restated from time to time, by Owner as borrower, and Bank as lender, dated as of April 17, 2007, in the aggregate principal amount of $9,948,507.18 as of the Petition Date plus interest, costs, fees, penalties and expenses.

1.72. "**Property**" means all of Owner's right, title, and interest in any and all property of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by Owner, or acquired by a Owner's estate, as defined in section 541 of the Bankruptcy Code, encumbered by the Mortgage Loan Documents and/or any order of the Bankruptcy Court, including without limitation, the Mortgaged Property. For the avoidance of doubt, Property includes, without limitation, any and all property encumbered by Adequate Protection Liens and all Security Deposits.

1.73. "**Receiver**" shall mean Andrew L. Herz as the temporary receiver of the Mortgaged Property.

1.74. "**Reduced Mortgage Lender Allowed Secured Claim**" shall have the meaning ascribed to such term in Section 4.2 of this Plan.

1.75. "**Rejection Damage Claim**" shall mean a Claim arising from the rejection, under section 365 of the Bankruptcy Code or under the Plan, of an executory contract or unexpired lease of a Debtor.

1.76. "**Released Parties**" means (i) Atlas Capital Group, LLC, (ii) Atlas Capital Investors II, LLC, (iii) 216 W 18 Lender LLC, (iv) Fishman Holdings North America Inc., (v) Bank of America, NA in its capacity as original lender under the Mortgage Loan, (vi) the Receiver, (vii) GreenOak Real Estate Advisors LP, (viii) Mortgage Lender Designee, and (ix) the officers, directors and employees of the Debtors, including but not limited to Steven A. Carlson as the Debtors' chief restructuring officer, and in the case of each of (i) - (viii) each such entities' respective direct and indirect parents, subsidiaries and affiliates, together with each of their respective shareholders, members, managers, general partners, limited partners, officers, directors, employees, agents, representatives, attorneys and advisors or consultants.

1.77. "**Schedules**" shall mean the Debtors' Schedules of Assets and Liabilities Filed pursuant to Bankruptcy Rule 1007 as they may be amended from time to time.

1.78.  "**Secured Claim**" shall mean all or a portion of a Claim existing on the Petition Date that constitutes a secured claim as defined in Section 506(a)(1) of the Bankruptcy Code, as finally allowed and approved by the Bankruptcy Court.

1.79.  "**Security Deposits**" shall mean security deposits posted by tenants of Owner in accordance with the terms of their leases with Owner and applicable non-bankruptcy law.

1.80.  "**Statutory Fees**" shall mean all fees payable pursuant to section 1930 of Title 28 of the United States Code and Section 3717 of Title 31 of the United States Code.

1.81.  "**Undisputed Cure Amounts**" shall have the meaning ascribed to such term in section 8.1 of this Plan.

1.82.  "**Unimpaired**" shall mean, with respect to a Class of Claims, a Claim that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

All terms not expressly defined herein shall have the respective meanings given to such terms in section 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code.

Unless otherwise specified herein, any reference to an Entity as a holder of a Claim or Equity Interest includes, with respect to such Claim or Equity Interest, that Entity's successors, assigns and affiliates.  The rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

All Exhibits to the Plan are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be timely filed in accordance with this Plan.  Holders of Claims and Equity Interests may obtain a copy of the filed Exhibits upon written request to the Debtors.  Upon their filing, the Exhibits may be inspected in the office of the Clerk of the Bankruptcy Court or its designee during normal business hours.  The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

## ARTICLE II

## METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS AND GENERAL PROVISIONS AND CLASSIFICATION OF CLAIMS AND INTERESTS

2.1.  **General Rules of Classification**.  Generally, a Claim is classified in a particular Class for voting and distribution purposes only to the extent the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class or Classes.  Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined Class and a more generally-defined Class, it shall be included in the more specifically defined Class.

8

2.2.    **Administrative Claims, Priority Tax Claims and Fee Claims**. Administrative Claims, Priority Tax Claims, and Fee Claims have not been classified and are excluded from the Classes set forth in Article III of the Plan in accordance with section 1123(a)(l) of the Bankruptcy Code.

2.3.    **Bar Date for Administrative Claims**. Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims (except for Fee Claims) must be filed and served on the Debtors, and their counsel, no later than thirty (30) days after the Effective Date (the "**Administrative Claims Bar Date**"). Any Person that is required to file and serve a request for payment of an Administrative Claim and fails to timely file and serve such request, shall be forever barred, estopped and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. Objections to requests for payment of Administrative Claims (except for Fee Claims) must be filed and served on the Debtors and their counsel, and the party requesting payment of an Administrative Claim within thirty (30) days after the filing of such request for payment. All Post-Petition Date ordinary course administrative claims shall be paid in the ordinary course during the Chapter 11 Cases.

2.4.    **Bar Date for Fee Claims**. Unless otherwise ordered by the Bankruptcy Court, requests for payment of Fee Claims incurred through the Effective Date must be filed and served on the Debtors and their counsel no later than twenty (20) days after the Effective Date (the "**Fee Claim Bar Date**").

2.5.    **Classification of Claims and Equity Interests**. The following is the designation of the Classes of Claims and Equity Interests under the Plan:

(a)    Class 1 Claims shall consist of all Other Priority Claims.

(b)    Class 2 Claims shall consist of the Mortgage Lender Claim.

(c)    Class 3 Claims shall consist of all General Unsecured Claims against Owner.

(d)    Class 4 Claims shall consist of all General Unsecured Claims against Mezz Debtor and Holder.

(e)    Class 5 Claims shall consist of the Mezzanine Loan Claim.

(f)    Class 6 Equity Interests shall consist of Equity Interests.

## ARTICLE III

## TREATMENT OF UNCLASSIFIED CLAIMS

3.1.    **Administrative Claims**. Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Administrative Claim (a) the full amount thereof in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Administrative Claim, or upon such other terms as may be agreed upon by

the holder of such Allowed Administrative Claim, or (b) such lesser amount as the holder of such Allowed Administrative Claim, the Debtors, and the Mortgage Lender Designee might otherwise agree. Notwithstanding the foregoing, the Statutory Fees shall be paid in Cash as soon as practicable after the Effective Date.

3.2.    **Priority Tax Claims**. Except as provided herein, each holder of an Allowed Priority Tax Claim shall be paid in respect of such Allowed Claim the full amount thereof, without post-Petition Date interest or penalty, in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim or upon such other terms as may be agreed upon by the holder of such Allowed Claim, the Debtors, and the Mortgage Lender Designee.

3.3.    **Fee Claims**. Each holder of an Allowed Fee Claim shall receive 100% of the unpaid amount of such Allowed Fee Claim in Cash after such Fee Claim becomes an Allowed Claim.

## ARTICLE IV

## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

The categories of Claims and Equity Interests listed below classify Claims against and Equity Interests in the Debtors for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date.

4.1.    **Class 1 Other Priority Claims**. Each holder of an Allowed Other Priority Claim shall be paid in respect of such Allowed Other Priority Claim (a) the full amount thereof in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Other Priority Claim, or upon such other terms as may be agreed upon by the holder of such Allowed Other Priority Claim, the Debtors, and the Mortgage Lender Designee or (b) such lesser amount as the holder of such Allowed Other Priority Claim, the Debtors, and the Mortgage Lender Designee might otherwise agree. The holder of a Claim in this Class is not impaired and, therefore, not entitled to vote and is conclusively presumed to accept this Plan.

4.2.    **Class 2 Mortgage Lender Claim**. Mortgage Lender shall have an Allowed Secured Claim in respect of the Mortgage Loan in the amount of $73,518,067.26 plus interest, costs, fees, penalties, and expenses accrued between September 15, 2011 and the Petition Date (the "**Mortgage Lender Allowed Secured Claim**"). The Mortgage Lender has agreed that solely in connection with the confirmation of this Plan, the Mortgage Lender Allowed Secured Claim shall be reduced to the total amount of $62,000,000.00 (the "**Reduced Mortgage Lender**

**Allowed Secured Claim**").  On the Effective Date, in full and complete satisfaction of the Reduced Mortgage Lender Allowed Secured Claim, Owner shall transfer and convey (the "**Property Transfer**") to the Mortgage Lender Designee all the Property, free and clear of all Claims, Liens, charges, interests and encumbrances other than the Mortgage and any other Liens, charges, interests, and/or encumbrances under the Mortgage Loan Documents; provided, however, that the Owner shall retain, and not transfer to Mortgage Lender Designee on the Effective Date (i) Cash needed to make other payments on the Effective Date pursuant to the terms of this Plan; (ii) the Administrative Claims Reserve; (iii) the Class 3 Disputed Claims Reserve; and (iv) sufficient Cash reserve to pay Statutory Fees; provided, further, that (x) following resolution and payment of the Claims provided for by the Administrative Claims Reserve, the Debtors, in accordance with section 7.3 of this Plan, shall transfer promptly to the Mortgage Lender Designee any balance remaining in the Administrative Claims Reserve and (y) following resolution and payment of the Claims provided for by the Class 3 Disputed Claims Reserve, the Debtors, in accordance with section 7.4 of this Plan, shall transfer promptly to the Mortgage Lender Designee any balance remaining in the Class 3 Disputed Claims Reserve.  The balance of the Mortgage Lender Claim in the amount of approximately $11,518,067.26 plus interest, costs, fees, penalties, and expenses accrued between September 15, 2011 and the Petition Date (the "**Mortgage Lender Allowed Deficiency Claim**"), solely in connection with the Confirmation and Effective Date of this Plan, shall be deemed waived and extinguished on the Effective Date.  Mortgage Lender reserves the right to assert and vote the Mortgage Lender Allowed Deficiency Claim as a Class 3 Claim but only in the event the Debtors amend the Plan and/or seek to utilize the cram-down provisions of Section 1129(b) as to Class 3 Owner General Unsecured Claims.  Mortgage Lender is impaired and therefore, is entitled to vote.  Nothing contained in this section or the Plan shall have the effect or be deemed to have the effect of discharging or terminating the Mortgage, the Mortgage Loan, or any other Mortgage Loan Documents, provided, however; that upon the occurrence of the Property Transfer, any and all obligations of the Debtors under the Mortgage, the Mortgage Loan, and any other Mortgage Loan Documents shall be deemed waived, extinguished, and discharged.  The Mortgage Lender Designee shall acquire the Property subject to the same.  In addition to the transfers set forth above, as a condition to the Effective Date of the Plan and contemporaneous with such Effective Date unless Mortgage Lender Designee has previously paid Mortgage Lender $62,000,000 in aggregate consideration, the Mortgage Lender Designee shall close on the LPA by, *inter alia*, paying Mortgage Lender $62,000,000 in aggregate consideration.

4.3.    **Class 3 Owner General Unsecured Claims**.  This Class shall consist of General Unsecured Claims against Owner other than the Mortgage Lender Deficiency Claim.  Each holder of a General Unsecured Claim shall receive cash on the Effective Date or as soon as practicable thereafter in the amount of 19.6% of its Allowed Claim (without interest).  The holders of Claims in this Class are impaired and therefore entitled to vote on the Plan.

4.4.    **Class 4 Other General Unsecured Claims**.  This Class shall consist of all General Unsecured Claims against Mezz Debtor and Holder.  Holders of Allowed Class 4 Claims will not receive any distribution of any kind under the Plan on account of their Allowed Other General Unsecured Claims.  The holders of Claims in this Class are impaired and are deemed to reject the Plan.

4.5. **Class 5 Mezzanine Loan Claim** This Class shall consist of the Claim of the Mezzanine Lender against the Mezz Debtor in connection with the Mezzanine Loan. The Mezzanine Lender will not receive any distribution of any kind under the Plan on account of the Mezzanine Loan. The holders of Claims in this Class are impaired and are deemed to reject the Plan.

4.6. **Class 6 Equity Interests** This Class shall consist of all Equity Interests. On the Effective Date, Class 6 Equity Interests shall be deemed cancelled, null and void and of no force and effect. Holders of Allowed Equity Interests will not receive any distribution of any kind under the Plan on account of Allowed Equity Interests, and are deemed to reject the Plan.

4.7. **Reservation of Rights**. Nothing contained herein shall be deemed to limit the right of the Debtors, the Mortgage Lender Designee, or the United States Trustee to object to any Administrative Claims (including without limitation Fee Claims and Cure Amounts), Priority Claims, Other Priority Claims, General Unsecured Claims (including without limitation Claims for rejection damages under Section 365 of the Bankruptcy Code) and Secured Claims filed in these Chapter 11 Cases other than the Mortgage Lender Claim which is deemed Allowed and not subject to objection. Nothing contained herein shall affect the Debtors' rights and defenses both legal and equitable, with respect to all members of any Unimpaired Classes including but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments asserted against members of any Unimpaired Classes subject to the releases granted herein.

**ARTICLE V**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

5.1. **Corporate Action**. Upon the entry of the Confirmation Order, all matters provided under the Plan involving the corporate structure of the Debtors shall be deemed authorized and approved without any requirement of further action by the Debtors, the Debtors' shareholders and/or members, or the Debtors' boards of directors, managers, and/or managing members. As soon as practicable following the Effective Date, each of the Debtors shall dissolve or otherwise terminate its existence, by filing a certificate of dissolution and a copy of the Confirmation Order and any other necessary documents with applicable state authority.

**ARTICLE VI**

**RELEASES**

6.1. **Releases by the Debtors**. Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration provided by each of the Released Parties, on the Effective Date and effective as of the Effective Date, the Released Parties are deemed released and discharged by the Debtors and their Estates from any and all direct, indirect or derivative claims, obligations, rights, suits, judgments, Liens, damages, causes of action, remedies, liabilities, claims or rights of contribution and indemnification, and all other claims, causes of action, controversies of every type, kind, nature, description or character whatsoever, including any derivative claims asserted on behalf of the Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated,

12

contingent or fixed, currently existing or hereafter arising, in law, at equity, whether for tort, fraud, contract or otherwise, that the Debtors would have been legally entitled to assert, including, but not limited to, any claim or cause of action arising from or relating to the Debtors, the Chapter 11 Cases, the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest of the Released Parties that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the negotiation, formulation, or preparation of the Plan and the Disclosure Statement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place, in each case to the extent incurred on or prior to the Effective Date, other than in each case claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence.

6.2.    **Injunction**. On the Effective Date, the Debtors shall be permanently enjoined from commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind, including asserting any setoff, right of subrogation, contribution, indemnification or recoupment of any kind, directly or indirectly, or proceeding in any manner in any place inconsistent with the releases granted by the Debtors and their Estates to the Released Parties pursuant to the Plan. The Confirmation Order shall specifically provide for such injunction.

The releases and injunctions granted in favor of the Released Parties are integral parts of the Plan and are necessary to confirm the Plan.

## ARTICLE VII

## DISTRIBUTIONS UNDER THE PLAN.

7.1.    **Distributions for Claims Allowed as of the Effective Date**. Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date or as soon thereafter as is practicable. Any distribution to be made on the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day. The Debtors shall make all distributions required to be made under the Plan. As a condition to the Effective Date of the Plan and contemporaneous with such Effective Date unless Mortgage Lender Designee has previously paid Mortgage Lender $62,000,000 in aggregate consideration, the Mortgage Lender Designee shall close on the LPA by, *inter alia*, paying Mortgage Lender $62,000,000 in aggregate consideration.

7.2.    **Delivery of Distributions**. Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents, unless the Debtors have been notified in writing of a change of address, including by the filing of a proof of claim or Administrative Claim request that contains an address for a holder of a Claim different from the address for such holder reflected on any Schedule.

7.3.    **Reserves for Administrative, Priority Tax and Other Priority Claims**. On or before the Effective Date, the Debtors shall establish and maintain a reserve in an amount equal to the sum of (i) all Disputed Administrative Claims, Disputed Cure Amounts, Disputed Priority Tax Claims and Disputed Other Priority Claims, if any, in an amount equal to what would be distributed to holders of Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Other Priority Claims, and Disputed Cure Amounts if their Disputed Claims have been deemed Allowed Claims on the Effective Date or on the Administrative Claims Bar Date or such other amount as may be approved by the Bankruptcy Court upon motion of the Debtors and/or the Mortgage Lender Designee and (ii) an estimated amount for unpaid Fee Claims and any other Administrative Claims that have not been filed as of the Effective Date, such amount to be agreed upon by the Debtors and the Mortgage Lender Designee or such other amount as may be fixed by the Bankruptcy Court (together, the "**Administrative Claims Reserve**"). With respect to such Disputed Claims, if, when, and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve therefore shall be distributed by the Debtors to the Claimant in a manner consistent with distributions to similarly situated Allowed Claims. The balance of such Cash, if any, remaining after all Fee Claims, Disputed Administrative Claims, Disputed Cure Amounts, Disputed Priority Tax Claims, and Disputed Other Priority Claims have been resolved and distributions made in accordance with the Plan, shall be released and distributed promptly to the Mortgage Lender Designee (and not to the Debtors). No payments or distributions shall be made with respect to a Claim that is a Disputed Claim pending the resolution of the dispute by Final Order or agreement of the parties (including the Mortgage Lender Designee).

7.4.    **Reserves for Disputed Claims**. On or before the Effective Date, the Debtors shall establish and maintain a reserve ("**Class 3 Disputed Claims Reserve**") for all Class 3 Disputed Claims, including any Disputed Rejection Damage Claims. For purposes of establishing a reserve for Class 3 Disputed Claims, Cash will be set aside in an amount equal to the amount that would have been distributed to the holders of Class 3 Disputed Claims had their Class 3 Disputed Claims been deemed Allowed Claims on the Effective Date or such other amount as may be approved by the Bankruptcy Court upon motion of the Debtors and/or the Mortgage Lender Designee. With respect to such Class 3 Disputed Claims, if, when, and to the extent any such Class 3 Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve therefore shall be distributed by the Debtors to the Claimant on the first business day following the end of the calendar quarter in which the Class 3 Disputed Claim becomes an Allowed Claim (or earlier in the discretion of the Debtors) and in a manner thereafter consistent with distributions to similarly situated Allowed Claims. The balance of such Cash, if any, remaining in the Class 3 Disputed Claim Reserve after all Class 3 Disputed Claims have been resolved and distributions made in accordance with the Plan, shall be released and distributed promptly to the Mortgage Lender Designee (and not to the Debtors). No payments or distributions shall be made with respect to a Claim that is a Disputed Claim pending the resolution of the dispute by Final Order or agreement of the parties (including the Mortgage Lender Designee). No payments or distributions shall be made with respect to post-Petition Date interest accruing on any Claim.

7.5.    **Claims Objection Deadline**. Objections to Claims shall be filed and served upon each affected Creditor by the Debtors and/or the Mortgage Lender Designee no later than thirty (30) days after the later of (i) the Confirmation Date ("**Objection Deadline**") and (ii) the date the

14

Claim is timely filed, provided however, that the Objection Deadline may be extended by the Bankruptcy Court upon motion of the Debtors with the consent of the Mortgage Lender Designee, without notice or hearing, for up to an additional sixty (60) days thereafter. The Objection Deadline shall automatically be extended without further order of the Court during the time period following the filing of the extension motion until such time as the Court enters an order granting or denying the requested extension.

7.6.    **Settlement of Disputed Claims**. Objections to Claims may be litigated to judgment or withdrawn, and may be settled with the approval of the Bankruptcy Court, except to the extent such approval is not necessary as provided in this section. After the Effective Date, and subject to the terms of this Plan, the Debtors may settle any Disputed Claim without providing any notice or obtaining an order from the Bankruptcy Court provided, however, that the Mortgage Lender Designee consents in writing to such settlement.

7.7.    **Unclaimed Property**. If any distribution remains unclaimed for a period of one hundred and eighty (180) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder of an Allowed Claim or Equity Interest entitled thereto, such unclaimed property shall be forfeited by such holder, whereupon all right, title and interest in and to the unclaimed property shall be held in reserve by the Debtors to be distributed to the Mortgage Lender Designee.

7.8.    **Release of Liens**. The Liens securing the Mortgage Loan shall survive Confirmation and the Effective Date and shall remain valid, enforceable and perfected Liens against the Property. On the Effective Date and except as expressly set forth in this Plan, all other mortgages, deeds of trust, Liens or other security interests against the Property of the Debtors' estates shall be released and forever discharged, and all the right, title and interest of any holder of such mortgages, deeds of trust, Liens or other security interests shall revert to the Mortgage Lender Designee and its successors and assigns.

7.9.    **Fractional Cents**. Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

7.10.    **Payments of Less than Twenty-Five Dollars**. If a cash payment otherwise provided for by this Plan with respect to an Allowed Claim would be less than twenty-five ($25.00) dollars (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, the Debtors shall not be required to make such payment.

## ARTICLE VIII

## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

8.1.    **Assumption of All Agreements**. Any and all pre-petition leases or executory contracts (and not otherwise previously rejected or the subject of a motion to reject pending on the Confirmation Date), shall be deemed assumed by the Owner and assigned to Mortgage

Lender Designee effective as of the Effective Date. Without limiting the forgoing, on the Effective Date, all leases of non-residential property with tenants shall be deemed assumed by Owner and assigned to Mortgage Lender Designee and all Security Deposits shall be transferred to Mortgage Lender Designee in accordance with the terms of this Plan and the Mortgage Lender Designee shall maintain custody and control of all Security Deposits posted by tenants in accordance with the terms of their leases and applicable non-bankruptcy law. Notwithstanding the foregoing, the Mortgage Lender Designee may designate executory contracts that are to be rejected by the Debtors no later than five (5) days prior to the Confirmation Hearing and Debtors shall promptly file such designation, if any, with the Bankruptcy Court and notify all affected counterparties. Any undisputed cure amounts (**"Undisputed Cure Amounts"**) shall be paid on the Effective Date of the Plan with any disputed cure claims (**"Disputed Cure Amounts"**) to be paid upon further agreement of the parties or further order of the Bankruptcy Court. Notwithstanding anything else in this paragraph or the Plan, the Mortgage Lender Designee may designate for rejection any executory contract within 3 days following the entry of an order of the Bankruptcy Court fixing the disputed cure amounts for such contract in which case such contract shall then be deemed to have been rejected as of the Confirmation Date.

8.2.    **Claims for Damages**. All proofs of claim with respect to Claims arising from the rejection of executory contracts or leases, if any, shall, unless another order of the Bankruptcy Court provides for an earlier date, be filed with the Bankruptcy Court within thirty (30) days after the mailing of notice of Effective Date. Any and all proofs of claim with respect to Claims arising from the rejection of executory contracts by Owner shall be treated as Class 3 General Unsecured Claims, for purposes of distribution pursuant to the Plan. Any and all proofs of claim with respect to Claims arising from the rejection of executory contracts by Mezz Debtor and/or Holder shall be treated as Class 4 Other General Unsecured Claims, for purposes of distribution pursuant to the Plan. Unless otherwise permitted by Final Order, any proof of claim that is not filed before the Bar Date (other than those Claims arising from the rejection of executory contracts or leases under the Plan, which may be filed within thirty (30) days after mailing of the notice of Effective Date as set forth above) shall automatically be disallowed as a late filed Claim, without any action by the Debtors, and the holder of such Claim shall be forever barred from asserting such Claim against the Debtors, their Estates, or property of their estates.

## ARTICLE IX

## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

9.1.    **Conditions to Confirmation of the Plan**. The Plan shall not be confirmed unless and until the following conditions have been satisfied in full or waived by the Mortgage Lender Designee:

(a)    The Confirmation Order shall be in form and substance satisfactory to the Mortgage Lender and Mortgage Lender Designee, which Confirmation Order shall approve all provisions, terms and conditions of the Plan; and

(b)    No material amendments, modifications, supplements or alterations shall have been made to the Plan, any document contained in the Plan Supplement or any other document delivered in connection therewith, without the express written consent of the Mortgage

Lender and Mortgage Lender Designee, which consent may be granted, withheld, or conditioned in its sole discretion).

9.2.    **Conditions to Effectiveness of the Plan**. The Plan shall not become effective unless and until (i) the Bankruptcy Court shall have entered the Confirmation Order by December 15, 2011 (or such other date as agreed to by Debtors and the Mortgage Lender Designee), the same shall be in full force and effect and not be subject to any stay or injunction and such Confirmation Order shall be in form and substance satisfactory to the Mortgage Lender Designee, and (ii) the Mortgage Lender Designee has closed on the LPA by, *inter alia*, paying Mortgage Lender $62,000,000 in aggregate consideration.

9.3.    **Effect of Failure of Condition**.    In the event that the conditions specified in section 9.2 of the Plan have not occurred on or before thirty (30) days after the Confirmation Date, the Confirmation Order shall be vacated upon order of the Bankruptcy Court upon motion made by the Mortgage Lender Designee.

9.4.    **Notice of the Effective Date; Actions Taken on Effective Date**

(a)    The Debtors shall file a notice of the occurrence of the Effective Date within five (5) Business Days thereafter.

(b)    Unless otherwise specifically provided in the Plan, any action required to be taken by a Debtor on the Effective Date may be taken by such Debtor on the Effective Date or as soon as reasonably practicable thereafter.

## ARTICLE X

## RETENTION OF JURISDICTION

10.1.    **Jurisdiction**. Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Debtors, as the case may be, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(a)    Claims. To determine the allowance, extent, classification, or priority of Claims against the Debtors upon objection by the Debtors or the Mortgage Lender Designee;

(b)    Injunction, etc. To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Case on or before the Effective Date with respect to any Person or Entity;

(c)     <u>Professional Fees</u>. To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods before the Effective Date, and objections thereto, as provided for in the Plan;

(d)     <u>Certain Priority Claims</u>. To determine the allowance, extent and classification of any Priority Tax Claims, Other Priority Claims, Administrative Claims or any request for payment of an Administrative Claim;

(e)     <u>Dispute Resolution</u>. To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and/or Confirmation Order and the making of distributions hereunder and thereunder;

(f)     <u>Executory Contracts and Unexpired Leases</u>. To determine any and all motions for the rejection, assumption, or assignment of executory contracts or unexpired leases, and to determine the allowance and extent of any Claims resulting from the rejection of executory contracts and unexpired leases;

(g)     <u>Actions</u>. To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted (either before or after the Effective Date) in the Chapter 11 Cases by or on behalf of the Debtors;

(h)     <u>General Matters</u>. To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code or other applicable law;

(i)     <u>Plan Modification</u>. To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(j)     <u>Aid Consummation</u>. To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person or Entity, to the full extent authorized by the Bankruptcy Code;

(k)     <u>Protect Property</u>. To protect the Property of the Debtors from adverse Claims or Liens or interference inconsistent with this Plan, including to hear actions to quiet or otherwise clear title to such property based upon the terms and provisions of this Plan;

(l)     <u>Abandonment of Property</u>. To hear and determine matters pertaining to abandonment of property of the Estates;

(m)     <u>Implementation of Confirmation Order</u>. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; and

(n)     <u>Final Order</u>. To enter a final order closing the Chapter 11 Cases.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

11.1.  **Pre-Confirmation Modification**. On notice to and opportunity to be heard by the United States Trustee, the Plan may be altered, amended or modified by the Debtors before the Confirmation Date as provided in section 1127 of the Bankruptcy Code; provided, however, that any such amendment or modification of the Plan must be approved in writing by the Mortgage Lender Designee.

11.2.  **Post-Confirmation Immaterial Modification**. With the approval of the Bankruptcy Court and on notice to and an opportunity to be heard by the United States Trustee and without notice to holders of Claims and Equity Interests, the Debtors may, insofar as it does not materially and adversely affect the interest of holders of Claims, correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite consummation of this Plan; provided, however, that any such amendment or modification of the Plan must be approved in writing by the Mortgage Lender and the Mortgage Lender Designee.

11.3.  **Post-Confirmation Material Modification**. On notice to and an opportunity to be heard, the Plan may be altered or amended after the Confirmation Date by the Debtors in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects holders of Claims, provided that such alteration or modification is made after a hearing and otherwise meets the requirements of section 1127 of the Bankruptcy Code; provided, however, that any such amendment or modification of the Plan must be approved in writing by the Mortgage Lender and the Mortgage Lender Designee.

11.4.  **Withdrawal or Revocation of the Plan**. The Debtors, in consultation with the Mortgage Lender Designee and Mortgage Lender, reserve the right prior to the Effective Date to revoke or withdraw the Plan as to any Debtor or all Debtors and, in the event the Plan is withdrawn or revoked with respect one or more Debtors but not all Debtors, proceed with confirmation and/or consummation of the Plan with respect to any Debtor for which the Plan is not withdrawn. If the Debtors revoke or withdraw the Plan (as to all Debtors) or if confirmation or consummation of the Plan (as to all Debtors) does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the allowance, fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests) and any assumption or rejection of executory contracts or leases affected by the Plan shall terminate and be of no further force or effect, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of Debtors or any other Person, or (iii) constitute an admission of any sort by the Debtors or any other Person. In the event the Debtors revoke or withdraw the Plan as to a Debtor or Debtors (but not all Debtors) and proceed with confirmation and/or consummation of the Plan with respect to the Debtors(s) for which the Plan is not withdrawn, then nothing contained herein shall constitute or be deemed a waiver or release of any Claims against or Interests in such Debtor(s) withdrawn from the Plan or any other Person or to prejudice in any manner the rights of such

19

Debtor(s), the Mortgage Lender, the Mortgage Lender Designee, or any Person in any further proceedings involving such withdrawn Debtor(s).

11.5.   **Payment of Statutory Fees**. All fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on the Effective Date (if due) by the Debtors. The Debtors shall pay all United States Trustee quarterly fees under 28 U.S.C. Section 1930(a)(6), plus interest due under 31 U.S.C. Section 3717, on all disbursements, including plan payments and disbursements in and outside of the ordinary course of business, until the earliest of the entry of a final decree closing the Chapter 11 Cases, dismissal of the Chapter 11 Cases, or conversion of the Chapter 11 Cases to cases under chapter 7.

11.6.   **Successors and Assigns**. The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person or Entities.

11.7.   **Exculpation**. On the Effective Date, (a) the Debtors, and their direct and indirect parents, subsidiaries and affiliates, together with each of its present and former shareholders, members, managers, general partners, limited partners, officers, directors, employees, agents, representatives, attorneys and advisors or consultants (solely in their capacities as such) and (b) the Mortgage Lender Designee, the Released Parties, and all of their respective direct and indirect parents, subsidiaries and affiliates, together with each of their respective present and former shareholders, members, managers, general partners, limited partners, officers, directors, employees, agents, representatives, attorneys and advisors or consultants (solely in their capacities as such) shall be deemed to release each of the other, and shall be deemed released by all holders of Claims or Equity Interests, of and from any claims, obligations, rights, causes of action and liabilities for any act or omission occurring through the date immediately preceding the Effective Date that arise from or are related to the Property and the ownership thereof, including, without limitation, any act or omission occurring during or relating to the Chapter 11 Cases, commencement of the Chapter 11 Cases, the solicitation of acceptances of this Plan, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which constitute willful misconduct or gross negligence, and all such Persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code.

11.8.   **Confirmation Injunction**. Except as otherwise provided herein, and as set forth in the Confirmation Order, (a) the rights afforded herein and the treatment of all Claims and Equity Interests herein, shall be in exchange for and in complete satisfaction and release of, all Claims and Equity Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtors or any of their assets and properties, (b) on the Effective Date, all such Claims against the Debtors and Equity Interests shall be satisfied and released in full, and (c) all Persons shall be precluded from asserting and shall be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) against the Debtors, their assets or properties, or any other or further Claims or Equity Interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

   11.9.  **Comprehensive Settlement of Claims and Controversies**. Pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Allowed Equity Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Equity Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or causes of action of (a) the Debtors and their Estates, including, without limitation, any Person or Entity seeking to exercise a right in a derivative capacity on behalf of the Estates, and (b) the Released Parties, and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates, their property and Claim and Equity Interest holders and is fair, equitable and reasonable. For the avoidance of doubt, the compromise and settlement of all claims and causes of action of the Debtors and their Estates as set forth herein shall include any potential avoidance actions accruing to the Debtors or their Estates, which shall not be pursued.

   11.10.  **Preservation of Insurance**. This Plan shall not diminish or impair the enforceability of any insurance policy, right or claim that may cover Claims against the Debtors (including, without limitation, their members, managers or officers) or any other person or entity. Likewise, the Plan and Confirmation Order shall not impair any insurance carrier's rights, claims, defenses or disputes under any policy and shall not act to increase or extend any rights of the Debtors or the carriers.

   11.11.  **Cramdown**. To the extent any Impaired Class of Equity Interest entitled to vote on the Plan votes to reject the Plan, the Debtors reserve the right to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to such Class(es), as well as with respect to Classes that are deemed to reject the Plan.

   11.12.  **Governing Law**. Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York.

   11.13.  **Notices**. Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

If to the Debtors:                      216 West 18 Owner LLC
                                        45 Adams Road
                                        Easton, Connecticut  06612
                                        Attention:  Steven A. Carlson

with a copy to:                         Bryan Cave LLP
                                        1290 Avenue of the Americas
                                        New York, NY 10104
                                        Attention:  Lloyd A. Palans, Esq.

Michelle McMahon, Esq.

| | |
|---|---|
| If to Mortgage Lender Designee: | Atlas Capital Group, LLC<br>505 Fifth Avenue, 28th Floor<br>New York, NY 10017<br>Attention: Andrew B. Cohen |
| with a copy to: | Greenberg Traurig, LLP<br>MetLife Building<br>200 Park Avenue<br>New York, NY 10166<br>Attention:  John H. Bae, Esquire<br>Gary D. Ticoll, Esquire |
| If to HAJ 18 LLC: | The Harsh Group<br>891 Second Avenue, 22nd Floor<br>New York, New York 10017<br>Attention:  Harry Jeremias |
| with a copy to: | Herrick, Feinstein LLP<br>2 Park Avenue<br>New York, NY  10016<br>Attention:  Jeffrey H. Kaufman, Esquire<br>Stephen B. Selbst, Esquire |
| If to Mortgage Lender: | 216 W 18 Lender LLC<br>c/o Fishman Holdings North America Inc.<br>950 3rd Ave., Suite 3101<br>New York, NY  10022<br>Attention:  Yehuda Mor |
| with a copy to: | Alston & Bird LLP<br>1201 West Peachtree Street<br>Atlanta, Georgia  30309<br>Attention:  Jason H. Watson, Esq.<br>David A. Wender, Esq. |

11.14. **Saturday, Sunday or Legal Holiday**. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

11.15. **Exemption From Transfer Taxes**. Pursuant to Bankruptcy Code section 1146(a): (a) the issuance, transfer, or exchange of notes or equity securities under the Plan; (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; (c) the making or assignment of any contract, lease or sublease; or (d) the making or delivery of any deed or other instrument of transfer or other consideration under, in the furtherance of, or in connection

with this Plan, including, without limitation, the delivery of the Property to Mortgage Lender Designee and any other payments and transfers pursuant to the Plan by any Debtor(s) to Mortgage Lender Designee; delivery of deeds, bills of sale, or other transfers of tangible property will not be subject to any stamp tax, or other similar tax or any tax held to be a stamp tax or other similar tax by applicable law.

11.16. **Severability**. If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at the option of the Mortgage Lender and the Mortgage Lender Designee, remain in full force and effect and not be deemed affected. However, the Mortgage Lender and the Mortgage Lender Designee reserve the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

11.17. **Headings**. The headings used in this Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the provisions of the Plan.

**[The Remainder of the Page Intentionally Left Blank]**

## CONFIRMATION REQUEST

The Debtors hereby request confirmation of the Plan pursuant sections 1129(a) and (b) of the Bankruptcy Code.

DATED: September 26, 2011

**DEBTORS:**

**216 WEST 18 OWNER LLC,**
  **a Delaware limited liability company**

By:  */s/ Steven A. Carlson*
     Name:  Steven A. Carlson
     Title:  Chief Restructuring Officer

**216 WEST 18 MEZZ LLC,**
  **a Delaware limited liability company**

By:  */s/ Steven A. Carlson*
     Name:  Steven A. Carlson
     Title:  Chief Restructuring Officer

**216 WEST 18 HOLDER LLC,**
  **a Delaware limited liability company**

By:  */s/ Steven A. Carlson*
     Name:  Steven A. Carlson
     Title:  Chief Restructuring Officer

# EXHIBIT
# A

## MORTGAGE LOAN DOCUMENTS

The documents listed below are dated as of April 17, 2007, unless otherwise indicated.

Building Loan

1.  Loan Agreement executed by Borrower, Bank and Borrower Principals.
2.  Promissory Note executed by Borrower.
3.  Mortgage executed by Borrower and Bank.
4.  Assignment of Leases and Rents.
5.  UCC-1 Financing Statement (Delaware Secretary of State).
6.  UCC-1 Financing Statement (New York County).
7.  Borrower's Certification executed by Borrower.
8.  Assignment and Subordination of Management Agreement executed by Borrower.
    Bank and the property manager described therein.
9.  Closing Instruction Letter executed by Borrower, Mezzanine Borrower (as defined
    in the Loan Agreement) and the title companies set forth therein.
10. Lender's Title Insurance Policy.
11. Collateral Assignment of Rate Cap Agreement.
12. 255 Affidavit.
13. Completion Guaranty.
14. Collateral Agreements Assignment of Construction Documents, Permits, Approvals and
    Other Related Documents.

Acquisition Loan

15. Loan Agreement executed by Borrower, Bank and Borrower Principals.
16. Promissory Note executed by Borrower.
17. Mortgage executed by Borrower and Bank.
18. UCC-1 Financing Statement (Delaware Secretary of State).
19. UCC-1 Financing Statement (New York County).
20. Borrower's Certification executed by Borrower.
21. Assignment and Subordination of Management Agreement executed by Borrower, Bank
    and the property manager described therein.
22. Lender's Title Insurance Policy.
23. Collateral Assignment of Rate Cap Agreement.
24. 255 Affidavit.
25. 275 Affidavit.
26. Interest and Operating Expenses Guaranty.

Project Loan

27. Loan Agreement executed by Borrower, Bank and Borrower Principals.
28. Promissory Note executed by Borrower.
29. Mortgage executed by Borrower and Bank.
30. Assignment of Leases and Rents.
31. UCC-1 Financing Statement (Delaware Secretary of State).

32.    UCC-1 Financing Statement (New York County).
33.    Borrower's Certification executed by Borrower.
34.    Lender's Title Insurance Policy.
35.    255 Affidavit.